**THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DYWAN MACON,** | ) | |
| **Plaintiff,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **v.** | ) | **Case No. 1:26-cv-00940** |
| | ) | |
| **TRANSUNION, LLC,** | ) | |
| **Defendant.** | ) | |
| | ) | |

---

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

---

## I. INTRODUCTION

**COMES NOW**, Dywan Macon (hereinafter "Plaintiff"), an individual consumer, by and through undersigned counsel, and hereby files this Complaint against Defendants, TransUnion, LLC (hereinafter "TransUnion"). Plaintiff alleges as follows:

## II. PRELIMINARY STATEMENT

1. This action arises out of repeated violations of the Fair Credit Reporting Act (hereinafter "FCRA") 15 U.S.C. § 1681 et seq., by TransUnion against Plaintiff.
2. Plaintiff found inaccurate, incomplete, false, and unverifiable information included in Plaintiff's file.

3. The FCRA mandates that credit reporting agencies disclose certain information to consumers upon request in order to allow consumers to verify the accuracy of information maintained in their credit files. *See* 15 U.S.C. § 1681g; *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2213 (2021) ("As the plaintiff's note, the disclosure and summary-of-rights requirements are designed to protect consumers interest in learning of any inaccuracies in their credit files so that they can promptly correct the files before they are disseminated to third parties.")

4. Additionally, the FCRA allows the consumer to check the accuracy of the information possessed by a consumer reporting agency by requiring that "[e]very consumer reporting agency shall, upon request . . . clearly and accurately disclose to the consumer [a]ll information in the consumer's file at the time of the request."..." *Gillespie v. Equifax Information Services, L.L.C.*, 484 F.3d 938 (7th Cir. 2007)

5. Despite Plaintiff's request for a complete file disclosure, TransUnion failed and refused to provide Plaintiff with his full file.

6. Furthermore, pursuant to a 2000 FTC Opinion Letter (Advisory Opinion to Darcy, June 30, 2000), "it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide 'accurate' (and perhaps not 'clear') disclosure of all information' in the file.

7. Courts have rejected dismissal where claims are based solely on account number truncation. *Rawls v. Trans Union*, No. 1:24-cv-03948-VMC-CCB, ECF No. 18 (N.D. Ga. Aug. 05, 2025)

## III. JURISDICTION AND VENUE

8. Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p.

9. TransUnion is subject to the provisions of the FCRA and is subject to the jurisdiction of this Court.

10. Venue is proper in this district under 28 U.S.C. § 1391(b) because TransUnion conducts substantial business within this district, and the events giving rise to this action occurred in Illinois.

## IV. PARTIES

11. Plaintiff, Dywan Macon, is a natural person residing in Chicago, IL.

12. Plaintiff, Dywan Macon, is a consumer as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681(a), (b), and (c).

13. Upon information and belief, Defendant, TransUnion, LLC, is an Illinois corporation duly authorized and qualified to do business in the State of Illinois.

14. Defendant, TransUnion is a nationwide *Consumer Reporting Agency* ("CRA") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis, TransUnion regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information

or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically the mail and internet.

15. As a CRA, TransUnion is aware of its obligations under the FCRA.

## V. FACTS OF THE COMPLAINT

16. On or about October 28, 2025, Plaintiff obtained copies of his consumer credit disclosures from Trans Union, LLC, through www.annualcreditreport.com.

***Trans Union File Number 397705468***

17. Pursuant to 15 U.S.C. § 1681g(a), TransUnion was required to provide a complete, clear, and accurate disclosure of all information in Plaintiff's file, with the same limited exception regarding Social Security number truncation.

18. TransUnion's disclosure failed to include key information from Plaintiff's credit file.

19. The inaccuracies included erroneous data, incomplete payment histories, missing source information, and late date of activity section.

20. The disputed and inaccurate credit accounts include, but are not limited to, the following:

A) **East Acceptance**, **Account No. B2024080820451808****, for which the full account number was not reported and the payment received status was inaccurately reported.

B) **Green Dot Corporation**, **Account No. 712345000105****, for which the full account number was not reported and the payment received status was inaccurate, and for which remarks, and scheduled payment information were omitted.

C) **Sunrise Credit Services Group**, **Account No. 23216207****, for which the full account number was not reported.

D) **The CBE Group, Inc.**, **Account No. 214303****, for which the full account number was not reported.

***Missing Sources Within The Personal Information Section***

a) Social Security Number xxx-xx-3768

b) Name: Dywan W. Macon

c) Name: Dywan William Macon

d) Address: 4224 W Jackson Blvd Apt 3 Chicago, IL 60624 Date reported 6/13/1021

e) Address: 1543 S Ridgeway Ave Frnt 2 Chicago IL 60623 Date reported 1/09/2013

f) Address: 1609 Maple Dr NW Cedar Rapids, IA 52405 7/27/2024

g) Phone Number: 773-870-4056

h) Phone Number: 319-280-8475

i) Phone Number: 773-632-8055

j) Phone Number: 312-210-2280

k) Phone Number: 312-925-7446

l) Phone Number: 312-779-5587

m) Phone Number: 773-673-0563

n) Phone Number: 312-392-8404

o) Phone Number: 312-837-6467

p) Phone Number: 312-538-4942

q) Phone Number: 773-885-3568

r) Employer: Autum Ridge Apartment Date Verified 6/7/2024

s) Employer: Red Oak Management Date Verified 5/28/2024

t) Employer: Self-Employed Date Verified 6/25/2020

21. A CRA "does not originate the underlying data" in the credit report, but rather "gathers information provided by data furnishers and makes that information available to consumers." *Roberts v. Trans Union, LLC*, CIV-25-00887-JD (W.D. Okla. Jul 30, 2026).

22. Here Plaintiff could not identify to dispute the source of the information.

23. Plaintiff avers that his credit file is riddled with material errors and omissions.

24. Under 15 U.S.C. § 1681g(a), upon receipt of Plaintiff's request, TransUnion was legally obligated to provide Plaintiff with a complete and accurate disclosure of all information in his credit file(s) at the time of his request.

25. TransUnion provided an electronic copy of Plaintiff's Consumer Disclosure via www.annualcreditreport.com.

26. Rather than comply with the FCRA, TransUnion knowingly and intentionally failed to disclose all the information in Plaintiff's credit file.

27. For instance, full account numbers are essential to allow consumers to determine whether a reported tradeline actually belongs to them, whether it is associated with a transaction they authorized, and whether the account is the product of error, misattribution, or identity theft.

28. Without access to complete account numbers, consumers, including Plaintiff, are unable to meaningfully verify ownership of reported accounts, reconcile duplicate or fragmented tradelines, or accurately dispute inaccurate or fraudulent information, thereby frustrating the remedial purpose of the Fair Credit Reporting Act and violating 15 U.S.C. § 1681g(a)(1).

29. The Federal Trade Commission has explained that a consumer reporting agency that routinely truncates or scrambles account numbers (or Social Security numbers) does not comply with Section 609 because such practices fail to

provide an "accurate," and potentially not a "clear," disclosure of "all information" in the consumer's file. FTC's Darcy opinion letter.

30. Here, Plaintiff made no such request. Plaintiff requested a full file disclosure and relied on TransUnion to provide all information clearly and accurately, as required by 15 U.S.C. § 1681g(a)(1).

31. TransUnion's failure to clearly and accurately disclose payment history prevents consumers such as plaintiff from obtaining a complete and truthful understanding of the contents of their consumer files and interferes with their statutory right to meaningfully review and dispute inaccurate information, in violation of 15 U.S.C. § 1681g(a)(1).

32. Without full payment history, a consumer cannot determine whether payments were properly credited, whether late payments were assessed, or whether the account was ever delinquent.

33. Complete payment history constitutes materially important information that must be disclosed to consumers under 15 U.S.C. § 1681g(a)(1) because it allows a consumer to determine whether an account was active, whether payments were made or missed, whether delinquency exists, and whether the reported tradeline accurately reflects the consumer's financial activity.

34. TransUnion's unilateral truncation and omission of material account information therefore violated the statute.

35. Under 15 U.S.C. § 1681g(a), upon receipt of Plaintiff request, TransUnion was legally obligated to provide Plaintiff with a complete and accurate disclosure of all information in his credit files at the time of his request.

36. Specifically, with respect to the accounts at issue identified above, TransUnion failed to clearly and accurately disclose the full account numbers and account identifiers associated with those accounts.

37. Instead, TransUnion disclosed only partial account numbers and identifiers, while withholding, truncating, or omitting the remaining digits and characters.

38. TransUnion further displayed asterisk marks in place of the undisclosed portions, indicating that additional information existed but was not provided.

39. Upon information and belief, TransUnion maintained additional digits and full account identifiers for these accounts but did not disclose them.

40. As a result, Plaintiff was unable to match the disclosed accounts to his own records or verify the accuracy and completeness of the information contained in his file.

41. Upon information and belief, TransUnion previously provided consumers with account numbers and account identifiers containing more than the last four digits in consumer file disclosures and consumer reports issued during or around the 1990s.

42. Thus, TransUnion's historical practice of maintaining and disclosing this information demonstrates that it is part of the consumer's "file" and, therefore, must be disclosed in response to a request for a consumer file disclosure.

43. TransUnion was therefore capable of providing more complete account identifiers at the time of Plaintiff's request.

44. This capability is further demonstrated by the fact that other consumer reporting agencies, including TransUnion, Equifax and Experian, provide more than digits on what was provided or what they were provided of account numbers and account identifiers when consumers request disclosures through the centralized source, www.annualcreditreport.com

45. TransUnion further failed to clearly and accurately disclose the source(s) of the names TransUnion's receives its data from with the personal information, account numbers, and even payment history.

46. Upon information and belief, TransUnion possessed and maintained the capability, through its systems, data repositories, and furnishing relationships, to disclose additional account-level information for the accounts at issue, including but not limited to payment history, monthly payments, and the sources of the information.

47. This capability is demonstrated by TransUnion's own prior consumer disclosures, files, and consumer reports furnished to third parties, in which such information has been included for other accounts.

48. Despite this capability, TransUnion failed to include this information in Plaintiff's consumer file disclosure for the accounts at issue.

49. The omission of these data fields rendered the disclosure incomplete, unclear, and inaccurate, and prevented Plaintiff from understanding, verifying, and evaluating the accuracy of the information contained in his file, in violation of 15 U.S.C. § 1681g(a)(1).

50. Upon information and belief, the furnishers of the accounts at issue provided TransUnion with full and complete account numbers, or more than what was shown thereof, as well as additional account-level information, including but not limited to the payment history and sources.

51. Upon further information and belief, TransUnion maintained this information within its systems, regardless of where the information was stored, at the time of Plaintiff's request for a consumer file disclosure.

52. Despite possessing this information, or having the capability to do so, TransUnion, as a matter of its practices, systems, and procedures, truncated, suppressed, or omitted such information from Plaintiff's disclosure.

53. Alternatively, TransUnion failed to maintain and implement reasonable procedures, policies, and systems requiring furnishers to provide complete, accurate, and non-omitted account information.

54. Such procedures were necessary to ensure that TransUnion could clearly and accurately disclose all information in a consumer's file upon request.

55. TransUnion's failure to require and obtain complete information from furnishers placed it in a position where it could not, and did not, provide a clear and accurate disclosure to Plaintiff.

56. The information Plaintiff alleges was incomplete, truncated, omitted, or not clearly and accurately disclosed is not merely internal or technical data.

57. Rather, it consists of material account-level information necessary for consumers to identify the accounts reported, match those accounts to their own records, detect inaccuracies, and meaningfully verify the completeness and accuracy of the information in their files.

58. Without this information, consumers such as Plaintiff are presented with a distorted and incomplete picture of their consumer file.

59. This impairs their ability to utilize the dispute and reinvestigation procedures set forth under 15 U.S.C. § 1681i and undermines the core purpose of 15 U.S.C. § 1681g(a)(1), which is to ensure that consumers can review and correct their information before it is disseminated to third parties.

60. As a result, TransUnion's failure to provide this information violated Plaintiff's right to a clear and accurate disclosure.

61. The actual payment amount allows consumers to determine whether payments were properly credited and whether balances reflect true financial activity.

62. This is to confirm whether an account was brought current and assess whether reported delinquencies are valid.

63. Complete payment history constitutes materially important information that must be disclosed to consumers under 15 U.S.C. § 1681g(a)(1) because it allows a consumer to determine whether an account was active, whether payments were made or missed, whether delinquency exists, and whether the reported tradeline accurately reflects the consumer's financial activity.

64. By omitting these material data fields and leaving critical account information blank, truncated, or otherwise undisclosed, including failing to provide full account numbers or additional account identifiers beyond what was shown, TransUnion deprived Plaintiff of the ability to determine whether the reported accounts pertained to transactions he conducted or accounts he actually maintained, identify the source from which the information originated, and cross reference the reported information with his own records.

65. The account information field is critical because it informs consumers, including Plaintiff, how the account is being characterized within their consumer file and how it is being sold to third parties.

66. Without a clear and accurate disclosure of the data fields, consumers cannot determine whether the reporting reflects the true condition of the account or whether the tradeline is being inaccurately characterized.

67. On information and belief, all CRA's have contacts and agreement to tell its clients (furnishers of information) how to report information to comply with the FCRA.

68. Plaintiff obtained his consumer file through www.annualcreditreport.com , the centralized source mandated by Congress. Pursuant to 12 C.F.R. § 1022.136 (see https://www.consumerfinance.gov/rules-policy/regulations/1022/136/#d ), all Defendants is required to provide files from these affiliated entities when a consumer requests a report through the central source, Defendants failed to provide its affiliated file/disclosures whatsoever when Plaintiff made the request through the central source. *Cortez v. Trans Union, L.L.C.*, 617 F.3d 688 (3d Cir. 2010) *Id.* at 711 (CRA may not evade disclosure requirements by "contracting with a third party to store and maintain information that would otherwise clearly be part of the consumer's file"); *Ramirez v. Trans Union, L.L.C.*, 2017 WL 1133161 (N.D. Cal. Mar. 27, 2017) (following Cortez), aff'd, 951 F.3d 1008 (9th

Cir. 2020), rev'd on other grounds, ___ U.S. ___, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021) (reversing for failure to establish Article III standing); *Jones v. Equifax, Inc.*, 2015 WL 5092514, at *2 (E.D. Va. Aug. 27, 2015) (quoting Cortez).

## VI. STATUTORY FRAMEWORK

69. The FCRA allows the consumer to check the accuracy of the information possessed by a consumer reporting agency by requiring that every consumer reporting agency shall, upon request, clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request. 15 U.S.C. § 1681g(a)(1).

70. Congress imposes two independent requirements on consumer reporting agencies: (1) that consumer disclosures be made clearly and (2) that they be made accurately, so that consumers may fully understand the contents of their files.

71. This allows consumers to compare the disclosed information with their own records, identify any inaccuracies, and correct them before the information is disclosed to third parties.

72. A consumer reporting agency that provides a disclosure that is neither clear nor accurate, and that omits pertinent information required to ensure the consumer can identify, understand, and verify the contents of their file, violates its

obligations under the Fair Credit Reporting Act and fails to provide a clear and accurate disclosure.

73. Webster's Third New International Dictionary (3d ed.1986), defines “clearly” as: “(1) in a clear manner (that which is and distinctly conceived as the truth); (2) of something asserted or observed: without doubt or question.” “Accurately” is defined “in an accurate manner.

## VII. ACTUAL DAMAGES

74. As a result of TransUnion’s failure to clearly and accurately disclose all information contained in Plaintiff’s consumer file at the time of Plaintiff's request, Plaintiff expended significant time attempting to interpret and understand a materially incomplete and misleading disclosure.

75. The disclosure, as described throughout this Amended Complaint, omitted material information and contained inaccuracies, ambiguities, and incomplete data, preventing Plaintiff from meaningfully reviewing and comparing the disclosure to his own records.

76. Due to these deficiencies, Plaintiff was required to review the disclosure multiple times and attempt to match the incomplete information with Plaintiff's personal records without success.

77. This resulted in additional confusion and frustration and further exacerbated Plaintiff’s emotional distress, as Plaintiff was forced to spend time attempting to

interpret an inadequate disclosure, only to realize that Plaintiff had not been provided with the information.

78. TransUnion's omissions materially interfered with Plaintiff's ability to meaningfully review and dispute inaccurate information as contemplated by 15 U.S.C. § 1681i.

79. If TransUnion had clearly and accurately disclosed all information that Plaintiff alleges in this Amended Complaint, Plaintiff would have been able to compare the reported data with his personal records, identify inaccuracies, and submit precise and effective disputes.

80. TransUnion's failure to do so deprived Plaintiff of that opportunity and resulted in concrete informational harm.

81. TransUnion's failure to clearly and accurately disclose all information in Plaintiff's file was the direct and proximate cause of Plaintiff's harm.

82. Specifically, Plaintiff was required to expend time attempting to interpret an incomplete and confusing disclosure and was unable to verify the accuracy of the reported information.

83. This deprivation of information caused Plaintiff to waste time and resulted in ongoing frustration, anger, and emotional distress.

## VIII. WILLFUL VIOLATIONS OF THE FCRA

84. TransUnion's violations of the Fair Credit Reporting Act were willful.

85. TransUnion knew or should have known that 15 U.S.C. § 1681g(a)(1) requires a consumer reporting agency to clearly and accurately disclose all information in a consumer's file upon request.

86. Despite this obligation, TransUnion maintained and implemented policies, practices, and procedures that resulted in the truncation, suppression, and omission of material account-level information from consumers disclosure, including Plaintiff's consumer disclosure.

87. Upon information and belief, TransUnion has long possessed the capability, through its systems, data repositories, and furnishing relationships, to disclose complete account identifiers and full account-level data, including original creditor information and other material fields.

88. Despite this capability, TransUnion, as a matter of practice, policy, and procedure, routinely fails to disclose such information to consumers in their file disclosures.

89. Upon further information and belief, TransUnion has been the subject of prior regulatory scrutiny and agreements with State Attorney General's concerning its disclosure practices, including the obligation to provide sufficient information for consumers to identify and understand the accounts reported, including original creditor information.

90. Notwithstanding such notice, TransUnion continues, as a matter of policy and procedure, to omit or suppress this information from consumer disclosures.

91. Upon further information and belief, TransUnion has been the subject of prior regulatory scrutiny and agreements with State Attorney General's concerning its disclosure practices.

92. In addition, prior guidance issued by the Federal Trade Commission (FTC) has addressed the requirement that consumer reporting agencies provide complete and meaningful disclosures sufficient to allow consumers to identify and understand the information in their files.

93. Despite this guidance, TransUnion has continued, as a matter of policy and practice, to withhold or suppress material information, including full account identifiers and original creditor information from consumer disclosures.

94. TransUnion's conduct was not the result of mere oversight or isolated error but rather reflects a deliberate and systemic practice of providing disclosures that are incomplete, unclear, and inaccurate.

95. TransUnion's conduct reflected a reckless disregard for their statutory obligations and created an unjustifiably high risk of violating Plaintiff's rights under the Fair Credit Reporting Act.

## IX. CAUSES OF ACTION

96. This suit is based upon TransUnion's violations of the Fair Credit Reporting Act.

97. All causes of action were the causes of damages, which Plaintiff suffered.

## X. FIRST CLAIM FOR RELIEF
## 15 U.S.C. § 1681g

98. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

99. TransUnion violated the FCRA.

100. TransUnion's violations include, but are not limited to, the following: TransUnion violated 15 U.S.C. § 1681g by failing to clearly and accurately disclose all of the information in Plaintiff's consumer file at the time of the request.

101. TransUnion violated 15 U.S.C. § 1681g(a)(2) by failing to clearly and accurately disclose the source of the information in Plaintiff's consumer file at the time of the request.

102. TransUnion's conduct in violating the FCRA was willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n.

103. In the alternative, they were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

## XI. JURY TRIAL DEMAND

104. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## XII. PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that judgment be entered against TransUnion for all damages allowable (including statutory, actual, compensatory, nominal, and punitive), costs, expenses, attorney fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

**Respectfully submitted this the 13th day of August 2026.**

**/s/ Noelle Sillmon**
**NOELLE SILLMON**
**Counsel for the Plaintiff**
**Alabama Bar No.: 4074Y61Q**
**Legally Noelle Services, LLC.**
**P.O. Box 242141**
**Montgomery, AL 36124**
**(334) 513-1710**
**legally.noelle@gmail.com**

## CERTIFICATE OF SERVICE

I certify that on August 13, 2026, I electronically filed the foregoing document(s) with the Clerk of the Court using the CM/ECF, and that the participants in the case that are registered CM/ECF users will be served electronically by the CM/ECF system.

T. Sterling Satterfield
William M. Huse
Quilling, Selander, Lownds, Winslett & Moser, P.C.

10333 N. Meridan St., Ste. 200
Indianapolis, IN 46290
sterling.satterfield@qslwm.com
whuse@qslwm.com
*Attorneys for Defendant, Trans Union LLC*

**/s/ Noelle Sillmon**
**Noelle Sillmon**