**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS (CHICAGO)**

---

DYWAN MACON,
Plaintiff,

v.

TRANSUNION, LLC,
Defendant.

CASE NO. 1:26-cv-00940

Judge Joan H. Lefkow

---

**TRANS UNION LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

---

Defendant consumer reporting agency Trans Union LLC ("Trans Union"), by counsel, respectfully submits this Memorandum in Support of its Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion").

The Motion should be granted in this Fair Credit Reporting Act ("FCRA") case where Plaintiff received the very consumer disclosure he requested, identified the challenged accounts from it, and now attempts to transform partial account-number masking and allegedly omitted information into a statutory violation despite alleging no concrete injury and no plausible withholding of information encompassed by his statutory file, because:

A. Plaintiff lacks Article III standing because the First Amended Complaint still does not allege any concrete injury resulting from the purported disclosure violations;

B. Plaintiff fails to state a claim under § 1681g because he does not plausibly allege that Trans Union withheld information contained in his statutory "file," as that term is defined by controlling Seventh Circuit law; and

C. Plaintiff's remaining theories do not expand Trans Union's obligations under § 1681g or otherwise state an independent basis for relief.

## I. FACTUAL BACKGROUND

Plaintiff asserts two claims against Trans Union under 15 U.S.C. §§ 1681g and 1681g(a)(2). First Amended Complaint, Dkt. No. 23 ¶¶ 96–103 (the "FAC"). The claims arise from a Trans Union consumer disclosure Plaintiff obtained through www.annualcreditreport.com on or about October 28, 2025, bearing Trans Union File No. 397705468. FAC ¶ 16. Plaintiff alleges that the disclosure failed to include all information contained in his consumer file and contained "erroneous data, incomplete payment histories, missing source information, and late date of activity section." FAC ¶¶ 17–19.

Plaintiff identifies four accounts as "disputed and inaccurate": East Acceptance, Green Dot Corporation, Sunrise Credit Services Group, and The CBE Group, Inc. FAC ¶ 20. As to each, Plaintiff alleges that the full account number was not disclosed. FAC ¶ 20(A)–(D). For East Acceptance, Plaintiff additionally alleges that the "payment received status" was inaccurately reported. FAC ¶ 20(A). For Green Dot, he alleges that the "payment received status" was inaccurate and that remarks and scheduled-payment information were omitted. FAC ¶ 20(B). For Sunrise and The CBE Group, Plaintiff alleges only that the full account number was not disclosed. FAC ¶ 20(C)–(D). Plaintiff also identifies various names, addresses, telephone numbers, and employment information for which he alleges Trans Union failed to disclose the source. FAC ¶¶ 20–23.

The consumer disclosure underlying Plaintiff's claim identifies each challenged account by name and partially masked account number and provides account-level information concerning those accounts. *See* Dkt. No. 1-3. As relevant here, the disclosure includes fields such as address, telephone number, date opened, responsibility, account type, loan type, balance, date updated, past due, pay status, estimated removal date, and remarks. *Id*. It also reports payment information and

payment history for the East Acceptance and Green Dot accounts, including month-by-month information for Green Dot concerning balance, high credit, past due, amount paid, scheduled payment, remarks, and rating. *Id*.

Plaintiff alleges, "[u]pon information and belief," that Trans Union maintained additional digits and complete account identifiers for the challenged accounts and that the furnishers provided Trans Union with complete account numbers, additional account-level information, payment history, and source information. FAC ¶¶ 39, 46, 50–52. Plaintiff further relies on Trans Union's alleged historical practices, systems, data repositories, furnishing relationships, prior consumer disclosures, and consumer reports furnished to third parties as support for his contention that additional information existed and could have been disclosed. FAC ¶¶ 41–52. Alternatively, Plaintiff alleges that Trans Union should have maintained procedures requiring furnishers to provide more complete account information. FAC ¶¶ 53–55.

Plaintiff alleges that these purported omissions prevented him from matching the challenged accounts to his records, verifying their accuracy, and submitting "precise and effective disputes." FAC ¶¶ 40, 49, 56–64, 74–83. He alleges that he spent time repeatedly reviewing the disclosure and attempting to match it against his own records and experienced confusion, frustration, anger, and emotional distress. FAC ¶¶ 74–83. He does not allege that the purported disclosure deficiencies resulted in a denial of credit, less favorable credit terms, or the dissemination of inaccurate information to a third party.

## II. STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' ... Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555. In analyzing a motion under Rule 12(b)(6), the Court should determine whether the allegations contained in the complaint, construed in the light most favorable to the Plaintiff, suggest the required elements of a particular legal theory. *See Twombly*, 550 U.S. 544, 555-56 (2007).

## III. <u>ARGUMENT</u>

### A. Plaintiff Lacks Article III Standing Because The First Amended Complaint Still Does Not Allege Any Concrete Injury Resulting From The Purported Disclosure Violations.

Plaintiff's amended allegations do not cure the lack of standing identified in Trans Union's prior briefing. Article III requires a concrete injury even where Congress has created a statutory cause of action. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 426–27 (2021). Thus, an alleged violation of the FCRA does not itself establish standing, and "an asserted informational injury that causes no adverse effects cannot satisfy Article III." *Id.* at 442. The Seventh Circuit applies the same rule: a statutory violation must cause or present an appreciable risk of harm to the concrete interest Congress sought to protect. *Casillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329, 333 (7th Cir. 2019).

The FAC adds allegations that Plaintiff spent time attempting to interpret the disclosure, unsuccessfully attempted to match information to his records, and experienced confusion, frustration, anger, and emotional distress. FAC ¶¶ 74–83. Plaintiff further alleges that, had Trans Union disclosed the additional information he seeks, he "would have been able" to identify inaccuracies and submit more "precise and effective disputes." FAC ¶¶ 78–80. Despite these new additions, Plaintiff's amended theory remains an alleged informational deficiency without any concrete downstream consequence.

Recent decisions addressing materially similar § 1681g theories reinforce that conclusion. In *Harding*, the court dismissed for lack of standing where the plaintiff alleged that omitted account numbers, account information, payment history, and affiliated-entity information prevented her from identifying and verifying accounts and caused frustration and emotional distress, because she alleged no dissemination, lost credit opportunity, or other concrete consequence flowing from the informational deficit. *Harding v. Experian Information Solutions, Inc.*, No. 8:26-cv-2009-KKM-CPT, 2026 WL 2146992, at *1–2 (M.D. Fla. July 27, 2026).

*Roberts* is even more telling because Plaintiff affirmatively cites it in the FAC. *Id.* ¶ 21. While Plaintiff invokes *Roberts* for the straightforward proposition that CRAs gather information from furnishers, he conveniently omits that *Roberts* dismissed a materially similar § 1681g claim for lack of standing where the plaintiff alleged omitted account information, truncated account numbers, postage, confusion, and emotional distress, but no inaccurate third-party furnishing, credit denial, changed credit terms, higher interest rate, or other adverse credit consequence. *Roberts v. Trans Union, LLC*, No. CIV-25-00887-JD, 2026 WL 2199252, at *4–5 (W.D. Okla. July 30, 2026).

Plaintiff's amended allegations continue to suffer from the same defect. He alleges that the purported omissions impaired his ability to compare the disclosure against his records and formulate more precise disputes, but he does not allege that this asserted impairment produced any concrete consequence. FAC ¶¶ 74–83. His allegation that he "would have been able" to submit more effective disputes is speculative at best, as the FAC identifies no dispute that failed because of the alleged omissions, no inaccuracy that remained uncorrected for that reason, and no third-party dissemination or credit consequence resulting from the supposed informational deficit.

Finally, Plaintiff's allegations of frustration, anger, emotional distress, and wasted time are not enough under controlling Seventh Circuit law. Again, the Seventh Circuit has concluded that anxiety, embarrassment, worry, and stress do not themselves establish concrete injury. *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668–69 (7th Cir. 2021); *Pennell v. Global Trust Management, LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021); *Pierre v. Midland Credit Management, Inc.*, 29 F.4th 934, 938 (7th Cir. 2022). And Plaintiff cannot convert an otherwise abstract statutory grievance into an Article III injury merely by spending time reacting to it. *See Pierre*, 29 F.4th at 938. Those principles apply equally in the FCRA context. *Salley v. Equifax Information Services, LLC*, No. 24 C 5627, 2024 WL 5145841, at *3 n.1 (N.D. Ill. Dec. 17, 2024) (recognizing that standing principles in the FDCPA and FCRA contexts are "largely interchangeable").

Thus, the FAC supplies familiar labels with additional "detail" to Plaintiff's alleged reactions, but it still does not allege the substance Article III requires. Plaintiff identifies no dissemination, lost credit opportunity, ineffective dispute, uncorrected inaccuracy resulting from the alleged omission, or other adverse consequence. Because the alleged informational deficiency caused no concrete harm, Plaintiff still lacks Article III standing. The Motion should be granted and the First Amended Complaint dismissed.

**B. Plaintiff Fails To State A Claim Under § 1681g Because He Does Not Plausibly Allege That Trans Union Withheld Information Contained In His Statutory "File," As Defined by Controlling Seventh Circuit Law.**

Section 1681g(a)(1) requires a consumer reporting agency to disclose "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). The Seventh Circuit has defined the scope of that obligation. In *Gillespie v. Trans Union Corp.*, 482 F.3d 907 (7th Cir. 2007), the plaintiffs argued that "file" encompassed all information Trans Union recorded or retained about them. *Id.* at 908–09. The Seventh Circuit rejected that construction and held that "file" means information included in a consumer report, not the consumer's "entire file[] in whatever form maintained by the CRA." *Id.* at 909. Section 1681g therefore requires disclosure of information within that statutory file; it does not require disclosure of every piece of information that may exist somewhere within a CRA's systems.

*Gillespie* (*Trans Union*) identifies the relevant distinction. The information at issue there was an internally generated "purge date" that Trans Union did not include in consumer reports furnished to third parties. *Id.* at 908. The plaintiffs argued that the purge date nevertheless belonged in their statutory files because it ***might*** be furnished in a consumer report. *Id.* at 909 The Seventh Circuit rejected that argument because the mere existence of information within Trans Union's files was insufficient; there had to be some showing, apart from its internal existence, that Trans Union had included similar information in a consumer report in the past or planned to do so in the future. *Id*. Thus, the relevant inquiry is not only whether Trans Union possessed information, but also whether the particular information allegedly withheld falls within the consumer-report information that § 1681g requires Trans Union to disclose.

The FAC attempts to supply the connection missing from Plaintiff's original Complaint. Plaintiff alleges that Trans Union historically disclosed more complete account identifiers, that its

prior disclosures and consumer reports furnished to third parties have included additional information for other accounts, and, "[u]pon information and belief," that the furnishers of the four accounts at issue supplied Trans Union with complete account numbers and additional account-level information that Trans Union maintained but did not disclose. FAC ¶¶ 39, 41–52. Unlike the original Complaint, those allegations at least address *Gillespie* (*Trans Union*). But alleging the missing premise is not the same as pleading facts that make it plausible. The FAC must still plausibly connect the specific information allegedly withheld from the four accounts at issue to Plaintiff's statutory file.

The FAC fails to do so. Plaintiff relies on the broad and ambiguous term "account identifiers" that Trans Union purportedly disclosed in the 1990s, what other consumer reporting agencies disclose, Trans Union's general technological "capability," and information appearing in prior disclosures and third-party consumer reports ***for other accounts***. FAC ¶¶ 41–47. None plausibly establishes what information existed for the four accounts at issue when he requested his disclosure. Plaintiff attempts to bridge that gap by alleging, "[u]pon information and belief," that the furnishers of these accounts provided Trans Union with fuller information, FAC ¶ 50, but that bare allegation is not enough. *See generally Dotson v. National Consumer Telecommunications & Utility Exchange, Inc.*, No. CIV-25-1171-SLP, 2026 WL 575337, at *3–4 (W.D. Okla. Mar. 2, 2026). Nor does alleging that information was maintained somewhere within Trans Union's "systems, regardless of where the information was stored," solve the problem. FAC ¶ 51. Without plausible allegations connecting the particular information to the four accounts at issue, the allegation is simply a refurbished version of the broader construction of "file" *Gillespie* (*Trans Union*) rejected. *Id.* at 910; *see Tailford v. Experian Information Solutions, Inc.*, 26 F.4th 1092, 1095, 1101–04 (9th Cir. 2022). Accordingly, Plaintiff still fails to state a claim under § 1681g.

### C. Plaintiff's Remaining Theories Do Not Expand Trans Union's Obligations Under § 1681g Or Otherwise State An Independent Basis For Relief.

The FAC piles additional theories onto the same deficient § 1681g claims, but none touch on a duty the statute actually imposes. Partial account-number masking is not itself a § 1681g violation where the disclosure identifies the accounts and permits meaningful review.[1] Plaintiff has not plausibly alleged a violation under § 1681g(a)(2) because the provision does not require a generalized audit of every source or furnishing relationship associated with information appearing in a consumer file.[2] And Plaintiff's reliance on *Cortez* and 12 C.F.R. § 1022.136 likewise does not expand the statutory "file" beyond the definition controlling in this Circuit, and his alternative theory that Trans Union should have required furnishers to provide additional information attempts to convert § 1681g's disclosure duty into a separate data-acquisition obligation the statute does not impose.[3]

The FAC's willfulness allegations add nothing further. Sections 1681n and 1681o are remedial provisions, not independent sources of substantive duty. And even if Plaintiff had plausibly alleged some technical violation of § 1681g, his generalized allegations concerning Trans Union's policies, technological capabilities, regulatory history, and FTC guidance do not plausibly

---

[1] *See Whitaker v. Trans Union Corp.*, No. CV 03-2551-GTV, 2005 WL 8160827, at *20 (D. Kan. Feb. 3, 2005); *Dotson v. National Consumer Telecommunications & Utility Exchange, Inc.*, No. CIV-25-1171-SLP, 2026 WL 575337, at *4 (W.D. Okla. Mar. 2, 2026). *Roberts* likewise rejected a truncation theory where the abbreviated numbers did not plausibly prevent identification, review, or dispute of the accounts. *Roberts v. Trans Union, LLC*, No. CIV-25-00887-JD, 2026 WL 2199252, at *6 (W.D. Okla. July 30, 2026), Plaintiff's own FAC identifies each challenged account by creditor name and the same partially masked number appearing in the disclosure. FAC ¶ 20(A)–(D).

[2] *See* FAC ¶¶ 45, 101. Plaintiff identifies broad categories of personal and account information but does not plausibly identify what particular source information Trans Union maintained and withheld as to any specific item. Section 1681g(a)(2) requires disclosure of sources of information in the consumer's file; it does not impose a freestanding obligation to disclose every source associated with every furnishing relationship.

[3] *See* FAC ¶¶ 53–55, 68. It bears noting that *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010), applies a broader conception of "file" than *Gillespie (Trans Union)* permits in this Circuit. *See generally id.* And *Roberts* recognized that a CRA cannot disclose information never furnished to it for the account at issue. *See* 2026 WL 2199252, at *6. Section 1681g therefore cannot be repurposed into a duty requiring Trans Union to compel furnishers to provide additional information.

establish knowing or reckless noncompliance under *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 69–70 (2007).[4]

In the end, the FAC is long on new labels but short on new statutory duties. It gives new labels to the same alleged disclosure defect and treats each label as though it creates a new statutory duty. To be clear, it does not. Section 1681g imposes a defined disclosure obligation, and none of Plaintiff's additional theories expands that obligation or supplies an independent basis for liability.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Trans Union respectfully requests that the Court grant the Motion and dismiss Plaintiff's claims against Trans Union *with prejudice* on the merits. In the alternative, should the Court find that Plaintiff lacks Article III standing, Trans Union requests that the Court dismiss the Complaint for lack of subject-matter jurisdiction. Trans Union further requests such other and further relief as the Court deems just and proper.

[4] *See* FAC ¶¶ 84–95. *Roberts* rejected materially similar allegations of knowing or intentional withholding as conclusory and further concluded that an informal FTC staff opinion lacks the authoritative force contemplated by *Safeco* and, standing alone, does not support a plausible inference of willfulness. 2026 WL 2199252, at *7 & n.9. That conclusion carries particular force where *Gillespie* (*Trans Union*), *Whitaker*, *Dotson*, and *Roberts* all support the reasonableness of Trans Union's interpretation.

Respectfully submitted,

*/s/ T. Sterling Satterfield*

Taevian Sterling Satterfield, Esq. (IN #39005-49)
(admitted *Pro Hac Vice*)
William M. Huse, Esq. (IL #3162249)
Quilling, Selander, Lownds, Winslett & Moser, P.C.
10333 North Meridian Street, Suite 200
Indianapolis, IN 46290
Telephone: 317-497-5600, Ext. 603 & 616
Fax: 317-899-9348
E-Mail: sterling.satterfield@qslwm.com
E-Mail: whuse@qslwm.com

*Counsel for Defendant Trans Union LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on the **25th day of August, 2026**. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing.

| | |
|---|---|
| Noelle I. Sillmon, Esq.<br>Legally.noelle@gmail.com | |

The undersigned further certifies that a true copy of the foregoing was served on the following parties via First Class, U.S. Mail, postage prepaid, on the **25th day of August, 2026** properly addressed as follows:

| | |
|---|---|
| None. | |

*/s/ T. Sterling Satterfield*
Taevian Sterling Satterfield, Esq. (IN #39005-49)
(admitted *Pro Hac Vice*)
William M. Huse, Esq. (IL #3162249)
Quilling, Selander, Lownds, Winslett &
Moser, P.C.
10333 North Meridian Street, Suite 200
Indianapolis, IN 46290
Telephone: 317-497-5600, Ext. 603 & 616
Fax: 317-899-9348
E-Mail: sterling.satterfield@qslwm.com
E-Mail: whuse@qslwm.com

*Counsel for Defendant Trans Union LLC*